**UNITED STATES DISTRICT COURT**
**SOUTHERN OHIO DISTRICT**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.            **CASE NO.: 2:10-CR-333**
                          **2:09-68(15)-VBF-CDCA**
                **JUDGE GEORGE C. SMITH**

**CHRISTOPHER J. KLEIN,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on the Government's request for restitution on behalf of "Amy"[1], one of the known victims depicted in the child pornography images possessed by Defendant Christopher Klein (Doc. 44).[2] Defendant Klein, through counsel, has filed a response in opposition to the restitution request. The Court held a hearing on this matter on November 2, 2011. This request for restitution presents an issue of first impression in this district: whether a criminal defendant who received and possessed child pornography, but did not create the images should be ordered to pay restitution under 18 U.S.C. § 2259, to a victim who was depicted in the child

---

[1] Amy is the victim identified in this case and her images are found in the "Misty" series of child pornography.

[2] The Government's request for restitution was filed with the Court on October 31, 2011, two days before Defendant's scheduled sentencing. The Court will address the timeliness issue in Section III, A below.

pornography.[3] After considering the arguments set forth in the briefs and presented at the hearing on this matter, the Court **GRANTS in part** the Government's request for restitution.

## I. BACKGROUND

Agents with the Federal Bureau of Investigation ("FBI") in Columbus, Ohio, and in California, as well as the Internet Crimes Against Children ("ICAC") Task Force in Columbus, Ohio, conducted an investigation into the downloading and trading of child pornography on a bulletin board known as "Lost Boy." The Defendant, Christopher Klein, became involved with the "Lost Boy" bulletin board by May 10, 2008. Defendant Klein, through the screen name of "Mr. Bean" or "Lookit," posted a number of messages on "Lost Boy" containing child pornography. He made approximately 160 public posts to other message board users. In addition to posting messages containing child pornography, Klein commented on child pornography posted by other members, and encouraged other members to continue to post child pornography. Further, the investigation determined Klein acted as a security person for the "Lost Boy" website and that he assisted others in protecting their involvement with child pornography by offering ways to avoid detection.

"Lost Boy" was hosted by Hostgator.com, which is a commercial web hosting company with more than one million hosted domains on its servers. Hostgator.com was paid to host "Lost Boy" through a Paypal account associated with co-defendant Woodendoll. "Lost Boy" was located on an

---

[3] There have been district courts within the Sixth Circuit that have addressed the requests for restitution to victims in possession cases in the judgment and commitment order; however, no written decision was issued. *See, e.g., United States v. Campana*, No. 07-cr-710 (N.D. Ohio 2009) (awarding $2500 to Vicky and Misty); *United States v. Bartlebaugh*, No. 09-cr-251 (N.D. Ohio 2009) (awarding $1000 for Vicky); *United States v. Steele*, No. 09-cr-10 (E.D. Ky. 2009) (awarding $1500 to Misty); and *United States v. King*, No. 09-cr-20133 (denying restitution request). Further, this Court has had two previous cases where restitution was sought and the parties reached an agreement as to the amount of restitution the Defendants in those cases should pay. *See United States v. Workman*, No. 10-cr-30; and *United States v. Dunwoody*, No. 10-cr.277.

Internet server in Texas, but also operated in every location where members of the bulletin board accessed it through the Internet. When Klein joined "Lost Boy," he was aware the "Lost Boy" board was itself a notice and advertisement, seeking and offering to receive, exchange, buy, produce, display, distribute and reproduce visual depictions of minors engaged in sexually explicit conduct, where the production of these images involved the use of minors engaged in sexually explicit activity.

The bulletin board "Lost Boy" was dedicated to "boy lovers," meaning men who have a sexual interest in young boys. The main purpose of "Lost Boy" was to provide a forum for the trading of child pornography. "Lost Boy" had a comprehensive vetting process for allowing new members to join the message board. Each member had to post child pornography in order to become a member. Furthermore, in order for "Lost Boy" members to remain in good standing and not be removed from the board, members were required to post images of child pornography. Members did not use their real names. Instead, they used screen names to mask their identities.

The investigation also determined that there was a smaller group of individuals affiliated with "Lost Boy" of which Defendant Klein was involved. In this smaller group of individuals, a peer-to-peer file sharing network, known as "Waste" was utilized to further avoid detection. When this process was used, individuals could sign onto their computer program with safety measures in place utilizing a thumb drive, which was utilized for sharing and receiving child pornography to their individual laptop computers. The individuals who utilized this group were informed of a specific time to meet on line and exchange peer-to-peer child pornography with each other. Once the session was completed, the individuals would remove the thumb drive and there would be no trace of their accessing child pornography left on their computer.

On September 30, 2010, a warrant was executed to search the residence of Christopher Klein at 1136/1138 East 17th Avenue, Columbus, Ohio, based on evidence related to child pornography

offenses. At the time the search warrant was executed, agents found images of child pornography on Klein's computer. Investigators determined that Defendant's personal computer contained thousands of images of child pornography, including both videos and photographs.

On April 19, 2011, the Defendant entered a guilty plea to Count 1 of the Indictment in Case Number 2:10-CR-333 (Southern District of Ohio, Eastern Division), charging him with receiving one or more visual depictions of child pornography in violation of 18 U.S.C. § 2252(a)(2) and Count 2 of the Second Superseding Indictment in Case Number 2:09-CR-68-VAP (Central District of California, Western District Los Angeles), charging him with conspiracy to advertise child pornography in violation of 18 U.S.C. § 2251(d)(1)(A) and (e). The Defendant was sentenced on these charges on November 2, 2011, to 60 months on Count 1 in 2:10-CR-333 and 180 months on Count 2 in 2:09-CR-68-VAP, to be served concurrently. Additionally, Defendant was sentenced to a term of supervised release of life on each count to run concurrently.[4] The Court notes that the restitution issue now before the Court was not contemplated at the time the Defendant entered his guilty plea to these charges.

Among the images and videos possessed by Defendant Klein were images of "Amy." Counsel for the victim, "Amy," has submitted a letter and other documentation to the Government requesting financial restitution for his client.[5] The victim, "Amy," is seeking reimbursement for her losses, in the amount of $3,367,854, for past and future treatment and counseling, as well as her lost and reduced income as a result of her abuse. Additionally, she has incurred expert witness fees in the amount of

---

[4] The Court is statutorily obligated to resolve the restitution issue within 90 days of the sentencing hearing. *See United States v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000).

[5] This information, filed under seal, is attached as Exhibit 1 to the Government's request for restitution. (Doc. 44).

$17,063, and attorney's fees estimated at $3500.

The victim, "Amy" has provided a statement describing how the abuse and exploitation she suffered as a child has hurt her. She describes that her uncle began sexually abusing her when she was only four years old. "Amy" further states:

> There is a lot I don't remember, but now I can't forget because the disgusting images of what he did to me are still out there on the internet. For a long time I practiced putting the terrible memories away in my mind. Thinking about it is still really painful. Sometimes I just go into staring spells when I am caught thinking about what happened and not paying any attention to my surroundings.
>
> Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again. It hurts me to know someone is looking at them–at me–when I was just a little girl being abused for the camera. I did not chose to be there, but now I am there forever in pictures that people are using to do sick things. I want it all erased. I want it all stopped. But I am powerless to stop it just like I was powerless to stop my uncle.
>
> When they first discovered what my uncle did, I went to therapy and thought I was getting over this. I was very wrong. My full understanding of what happened to me has only gotten clearer as I have gotten older. My life and my feelings are worse now because the crime has never really stopped and will never really stop.
>
> It is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle and is getting some kinds of sick enjoyment from it. It's like I am being abused over and over and over again.

(Gov't Memo. Ex. 1).

The Government is seeking restitution for the victim "Amy" pursuant to 18 U.S.C. § 2259. The Government asserts that the Court is required to award restitution to the victim in the full amount of her losses. The Defendant, however, argues that the Court should deny the request for restitution because the Court cannot determine with reasonable certainty what if any of the alleged harm was proximately caused by the Defendant.

## II. APPLICABLE LAW

Amy, the victim in this case, is seeking restitution pursuant to the Mandatory Restitution for Sex Crimes section of the Violence Against Women Act of 1994, codified at 18 U.S.C. § 2259. This statute provides, in pertinent part, as follows:

Section 2259. Mandatory Restitution

(a) In general. Notwithstanding section 3663 or 3663A [18 USCS § 3663 or 3663A], and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter [18 USCS §§ 2251 et seq.].

(b) Scope and nature of order.
  (1) Directions. The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).

   (2) Enforcement. An order of restitution under this section shall be issued and enforced in accordance with section 3664 [18 USCS § 3664] in the same manner as an order under section 3663A [18 USCS § 3663A].

  (3) Definition. For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for--
     (A) medical services relating to physical, psychiatric, or psychological care;
     (B) physical and occupational therapy or rehabilitation;
     (C) necessary transportation, temporary housing, and child care expenses;
     (D) lost income;
     (E) attorneys' fees, as well as other costs incurred; and
     (F) any other losses suffered by the victim as a proximate result of the offense.

   (4) Order mandatory.
     (A) The issuance of a restitution order under this section is mandatory.
     (B) A court may not decline to issue an order under this section because of--
        (i) the economic circumstances of the defendant; or
        (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.

(c) Definition. For purposes of this section, the term "victim" means the individual harmed as a result of a commission of a crime under this chapter [18 USCS §§ 2251 et seq.], including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or

guardian.

The burden of proof is on the Government to prove that restitution is appropriate under 18 U.S.C. § 2259 by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government."). *See also United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001) (noting that "[t]he government bears the burden of proving the amount of loss when seeking restitution," and remanding a restitution order under § 2259 where there was no evidence regarding the victim's need for future counseling); *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999) ("The Government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by the victim.").

### III. DISCUSSION

The Government is seeking restitution on behalf of one of the victims in this case, "Amy." The Defendant argues that he has not caused any additional harm to this victim and therefore should not be ordered to pay restitution. The Court will consider the application of 18 U.S.C. § 2259 to this case by first analyzing whether the victim was an intended victim under the statute and then whether the victim's losses were proximately caused by Defendant Klein. Finally, if the Court determines that restitution should be awarded in this case, it will determine how much is appropriate. As a preliminary matter, the Court will address the timeliness of the Government's request for restitution.

#### A. Timeliness of Request for Restitution

The Government's request was filed with the Court on October 31, 2011, despite this Court's Order issued on May 4, 2011 instructing counsel for the Government to file any restitution requests within one week after the filing of the Presentence Report. (Doc. 36). The Presentence Report was

filed with the Court on June 24, 2011, and counsel was notified on that same day that the sentencing was scheduled for November 2, 2011. (Docs. 37 and 39). Despite the Court's best efforts to require the parties to raise this issue in a timely manner, it was not raised until the eleventh hour. Pursuant to this Court's Scheduling Order, the Government's request is not timely.

The Court must also consider whether such request is timely under the statute in which the restitution is requested, 18 U.S.C. § 2259. Section 2259 provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 [18 USCS § 3664] in the same manner as an order under section 3663A [18 USCS § 3663A]." Section 3664 provides: "[u]pon the request of the probation officer, but not later than 60 days prior to the date initially set for sentencing, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution."

The Government argues that "[t]he language 'to the extent practicable' demonstrates flexibility, not a rigid time requirement that defeats an otherwise valid restitution claim." (Gov't Memo. at 3). The Government further states that this information was provided in a timely fashion. The problem with the Government's reasoning is that this is not the case where the restitution amount is still being determined. Rather, these victims, such as "Amy" and "Vicky", are filing similar requests for restitution across the country, which includes a predetermined amount of restitution sought. Presumably, these victims could submit these requests to the Government upon notification that they are victims in the case. In the case at bar, it is not known when the victims were notified, but it could have been as early as October 2010, after the Defendant was arrested on this charge and the authorities discovered the images on his computer. Therefore, it seems very practicable that the victim "Amy" could have submitted her request for restitution any time in the last year. Despite this,

there is no reasonable explanation for why it was filed at the eleventh hour. Nonetheless, without established caselaw on this issue, the Court will consider the Government's request for restitution.

### B. Identification of "Victims" under 18 U.S.C. § 2259

The victim "Amy" is seeking restitution under 18 U.S.C. § 2259, therefore the Court's first inquiry is whether she is a "victim" under the statute. Section 2259 defines "victim" as "the individual harmed as a result of a commission of a crime under this chapter [the Sexual Exploitation and Other Abuse of Children Chapter of Title 18]. 18 U.S.C. § 2259(c). It is undisputed that Defendant Klein was convicted of a crime under this chapter, receiving visual depictions of child pornography in interstate commerce in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and that images of "Amy" were in Defendant's possession. *See e.g., United States v. Berk*, 666 F. Supp.2d 182, 185 (D. Me. 2009) (finding it "undisputed" that a conviction for possession of child pornography in violation of § 2252A(a)(5)(B) constituted a Chapter 110 conviction). Further, both parties agreed at the hearing that "Amy" is a victim under this statute. Thus, it follows that "Amy" is a victim under 18 U.S.C. § 2259, if she was harmed as a result of Defendant's possession of her images.

There is no question that the children depicted in the images and videos of child pornography have been harmed. The Supreme Court first addressed this issue in *New York v. Ferber*, 458 U.S. 747 (1982). In upholding the New York statute that prohibited the distribution of child pornography and ultimately the Defendant's conviction, the Supreme Court detailed how child pornography harms the children depicted. The Court recognized that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children," because "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759. The Supreme Court revisited this issue in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2005), and confirmed that victims of child

pornography are harmed by the creation of the images and a new harm is caused each time the images are distributed. The Court stated: "[A]s a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Id.*

The detailed analysis by the Supreme Court is primarily focused on the creation and distribution of child pornography and does not address whether the victims are harmed when an image or video of them is found in the possession of another person.

The Third Circuit Court of Appeals, however, held that a child depicted in pornography possessed by a defendant was directly victimized by the defendant. *See United States v. Goff*, 501 F.3d 250 (3d Cir. 2007) (the Court was responding to the defendant's contention that his crime of possession of child pornography was victimless, stating that "[t]he simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. Consumers such as [defendant] who 'merely' or 'passively' receive or posses child pornography directly contribute to this continuing victimization. Having paid others to 'act out' for him, the victims are no less damaged for his having remained safely at home[.]").

The Fifth Circuit has also addressed this issue in *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998), holding that "children depicted in child pornography may be considered to be the victims of the crime of receiving child pornography." The Fifth Circuit determined that "the 'victimization' of the children involved does not end when the photographer's camera is put away," rather, "the victimization. . . flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." *Id.* at 929-30.

Congress has even spoken on this issue in the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501, 120 Stat. 587, 623 (2006). Congress found that "[t]he illegal production, transportation, distribution, receipt, advertising and possession of child pornography . . . is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole." *Id.* Congress further observed that "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and repetition of their abuse." *Id.* at 624.

"Amy" through her counsel, has submitted a significant amount of documentation to support a finding that she has been harmed by the distribution of her images on the internet. For example, in the Childhood Recovery Services Report of Psychological Consultation by Joyanna Silberg, Ph.D., a clinical psychologist who evaluated Amy, Dr. Silbert reported that "the re-victimization of Amy through the trading of her images on the Internet is the source of enduring trauma that will have lasting effects on her and the symptoms she displays are particularly resistant to the standard treatment for post-traumatic stress and the effects of sexual abuse." (Gov't Memo. Ex. 1 at 57). Further, Amy stated in her victim impact statement that "[i]t is hard to describe what it feels like to know that at any moment, anywhere, someone is looking at pictures of me as a little girl being abused by my uncle and is getting some kind of sick enjoyment from it. It's like I am being abused over and over and over again." (Gov't Memo. Ex. 1 at 45).

Based on the analysis of the aforementioned caselaw and the documentation proving that "Amy" has been harmed and continues to be harmed each time her images are distributed via the internet, the Court finds that the victim, "Amy" is a victim of Defendant Klein's offense for purposes of § 2259. The Court now turns to the issue of causation between Defendant Klein's possession of child pornography offense and the victim's alleged losses.

**B.    Causation Requirement**

The primary issue in this case is whether the Government has met its burden of proving by a preponderance of the evidence the amount of the victim's losses that were proximately caused by Defendant Klein's conduct. The Government generally argues that the proximate cause requirement[6] is satisfied because the victim was harmed. However, there appears to be some confusion between the proximate cause requirement and the requirement that the victim be harmed as a result of Defendant Klein's conduct. As this Court has previously found, the victim "Amy" was harmed and continues to be harmed as her images are distributed over the internet. However, there was no evidence presented in the briefs or during the hearing on this matter to prove how much of the victim's harm, or what amount of her losses, were proximately caused by Defendant Klein's conduct in this offense.

There is a dispute, not just in this case, but in courts across the country as to whether § 2259 allows a victim to recover for only those losses proximately caused by the defendant being sentenced, or "whether it allows a victim to recover the full amount of her losses from the defendant being sentenced, notwithstanding other defendants' (most obviously, the abuser's) contribution to the loss." *Berk*, 666 F. Supp.2d at 186. The most recent decision on this issue, *United States v. Aumais*, was

---

[6] This district and the Sixth Circuit have not considered restitution awards under § 2259; however, other circuits have interpreted the statute to require a causal connection between the victim's losses and the offense of conviction. *See United States v. Aumais,* 656 F.3d 147, 154 (2nd Cir. 2011) ("Of the circuits that have reached the causation issue, most have held that the text of § 2259 requires a showing of proximate cause."); *United States v. McDaniel*, 631 F.3d 1204, 1208 (11th Cir. 2011); *United States v. Monzel*, 641 F.3d 528, 535 (D.C. Cir. 2011); *United States v. Kennedy*, 643 F.3d 1251, 1259 (9th Cir. 2011); *In re Amy*, 591 F.3d 792, 794 (5th Cir. 2009) ("Courts across the country have followed and applied the proximate-cause requirement in imposing restitution under Section 2259."); *see also United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999); *United States v. Searle*, 65 F. App'x 343, 346 (2d Cir. 2003); *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007); and *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999).

decided by the Second Circuit on September 8, 2011. In *Aumais*, the District Court found that although Amy had neither contact with Aumais nor knowledge of his existence, his possession of her images exacerbated the harm (originally caused by her uncle) by creating a market for distribution, and by inflicting the humiliation of knowing that the images are out there being exploited by a group of consumers, of whom Aumais was one. 2010 U.S. Dist. LEXIS 78407, at *6 (N.D.N.Y. Jan. 13, 2010). Although Aumais may be among hundreds or thousands of such others, it was found that Amy's harm was not thereby obviated or diminished; rather, "it exacerbate[d] the harm by confirming how expansive has become the number of individuals exploiting Amy's images." *Id.* The District Court ordered Aumais to pay $48,483 for Amy's future counseling costs. The Second Circuit, however, reversed the restitution order finding that the victim's loss was not proximately caused by the defendant's possession of the victim's image. The Court reasoned that:

> Amy's Victim Impact Statement makes no mention of Aumais (or any other possessor of her images for that matter). Moreover, Dr. Silberg's evaluation of Amy, upon which the doctor's testimony was based, took place on June 11-12, 2008, July 29, 2008, and November 10, 2008, whereas Aumais was not arrested at the border until November 16, 2008. While Dr. Silberg may describe generally what Amy suffers from knowing that people possess her images, Dr. Silberg cannot speak to the impact on Amy caused by this defendant. As the Ninth Circuit held in rejecting another of Amy's claims:
>
>> [T]he government's evidence showed only that [the defendant] participated in the audience of persons who viewed the images of Amy . . . . While this may be sufficient to establish that [the defendant's] actions were one cause of the generalized harm Amy . . . suffered due to the circulation of [her] images on the internet, it is not sufficient to show that they were a proximate cause of any particular losses.
>
> *United States v. Kennedy*, 643 F.3d 1251, 1264 (9th Cir. 2011). Here, in the absence of evidence linking Aumais' possession to any loss suffered by Amy, we cannot agree with the magistrate judge's conclusion that "Aumais' conduct remains a substantial cause of [Amy's] harm." *Aumais* I, 2010 U.S. Dist. LEXIS 78407, 2010 WL 3033821, at *6.

This opinion does not categorically foreclose payment of restitution to victims of child

> pornography from a defendant who possesses their pornographic images. We have no basis for rejecting Dr. Silberg's findings that Amy has suffered greatly and will require counseling well into the future. But where the Victim Impact Statement and the psychological evaluation were drafted before the defendant was even arrested--or might as well have been--we hold as a matter of law that the victim's loss was not proximately caused by a defendant's possession of the victim's image.

*Aumais*, 656 F.3d at 154.

The Defendant argues that the evidence submitted in *Aumais* was similar to that submitted in the case at bar, a large packet of information, including pyschologists reports and the victim impact statement that were prepared well before Klein was found in possession of any image of "Amy." The evidence in this case shows that Amy's damages were calculated on September 15, 2008, and she prepared her victim impact statement on November 21, 2008. Yet, the Defendant in this case, Christopher Klein, was not arrested until September 30, 2010. Therefore, according to the Second Circuit in *Aumais*, "where the Victim Impact Statement and the psychological evaluation were drafted before the defendant was even arrested. . . the victim's loss was not proximately caused by a defendant's possession of the victim's image." *Id.*

The Government concedes that § 2259 requires a "causal connection" between the victim's losses and the defendant's offense, but further states that courts "have not imposed a requirement of causation approaching mathematical precision." (Gov't Memo. at 8, citing *United States v. Doe*, 488 F.3d 1154, 1159-1160 (9th Cir. 2007)). The Government urges this Court to apply a rule of reasonableness when considering the causation requirement of § 2259. (Gov't Memo. at 9).

The Court has carefully reviewed the evidence submitted by the Government. The psychological reports and Amy's victim statement leave no doubt that she has suffered tremendously as a victim of child pornography. However, this is not the end of the Court's inquiry. This Court must make "explicit findings of fact" supporting its calculation of "the full amount of the victim's

losses," as delineated in § 2259(b)(3), which were proximately caused by the Defendant's offense. *See United States v. Wilkinson*, 590 F.3d 259, 270 (4th Cir. 2010) (vacating and remanding district court's finding the victim suffered no actual pecuniary loss under the MVRA, as "the record [was] not amenable to appellate review"); *United States v. Blake*, 81 F.3d 498, 505 (4th Cir. 1996) ("This court has repeatedly held that in order to ensure effective appellate review of restitution orders, sentencing courts must make explicit findings of fact on each of the factors set forth in 18 U.S.C.A. § 3364(a).").

As the Court discussed above, none of the evidence submitted on behalf of the victim "Amy" makes any reference to Defendant Klein. There is no evidence upon which the Court could reasonably calculate the measure of specific harm done to the victim, that was proximately caused by the Defendant Klein's conduct. The Court, however, acknowledges the difficulties faced by the Government and the victims to establish separate and/or additional harm that was proximately caused by each and every Defendant caught possessing their images. The Government mentioned during the hearing that these child pornography images are being found almost on a daily basis and it would be unreasonable for the victims to have to update their request for restitution daily. Regardless of these difficulties, the Government must still establish that the victim's loss was proximately caused by the defendant's possession of the victim's image. One court noted "[i]f, after receiving notification of the Defendant's offense, the victim had to attend any additional therapy sessions, had to miss any days of work, or incurred any additional expenses as a result thereof, then the Court would have a basis for making specific factual findings *supporting a calculation of losses proximately caused by the Defendant's offense." United States v. Church*, 701 F. Supp. 2d 814 (W.D. Va. 2010) (citing *Berk*, 666 F. Supp. 2d at 191-92).

Notwithstanding the Government's failure to satisfy its burden of proving the victim's losses

proximately caused by the Defendant in this case, the Government still established that "Amy" has been harmed by the dissemination of her images on the internet. The Court is sympathetic to the victims of child pornography, recognizing the harm they have suffered and will continue to suffer throughout their adult lives. Further, Defendant Klein did plead guilty to 18 U.S.C. §§ 2252(a)(2) and (b)(1) and 18 U.S.C. §§ 2251(d)(1)(A) and (e), and did not contest that he unlawfully possessed pornographic images of the victim "Amy." Therefore, in accordance with § 2259, an award of restitution to the victim is mandatory. *See* 18 U.S.C. § 2259(b)(4) ("The issuance of a restitution order under this section is mandatory."). However, where a party "establishes a wrong and actual loss therefrom, he or she is entitled to nominal damages at least . . . where the evidence fails to show the extent of the resulting damages." 25 C.J.S. *Damages* § 14 (2009); *see also Doe v. Chao*, 306 F.3d 170, 181 (4th Cir. 2002) (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("Nominal damages, when available are designed to vindicate legal rights 'without proof of actual injury.'")). Accordingly, having established that the victim "Amy" was harmed as a result of Defendant's offense, but lacking any evidence in the record upon which the Court could determine the full amount of the victim's losses proximately caused by Defendant Klein, the Court will order nominal damages to be paid to "Amy" pursuant to 18 U.S.C. § 2259.

### C.    Restitution Amount

Title 18 U.S.C. § 2259 mandates that the Court award restitution to victims in "the full amount of the victim's losses" and specifically forbids the Court from declining to issue an order under this section because of "(i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, received compensation for his or her injuries from the proceeds of insurance or any other source." However, the statute also direct the Court to award restitution "as determined by the court . . . in accordance with section 3664 in the same manner as an order under

section 3663A." 18 U.S.C. § 2259.

The court "may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." *See* 18 U.S.C. § 3664(h) (governs awards of restitution under § 3663A, and therefore, under § 2259); *see also United States v. Zander*, 319 Fed. Appx. 146, 150 (3d Cir. 2009) (§ 3664(h) allows, but does not require, a sentencing court to apportion restitution.). In *United States v. Hardy*, 2010 U.S. Dist. LEXIS 38505 (W.D. Pa. 2010), the Court recognized that "other courts have sought to strike a balance between making the victim whole and not penalizing the defendant disproportionately for his part in the losses." The Court's analysis of restitution awards in other cases follows:

> In *Staples*, the district court imposed joint and several liability after it found that Amy was a "victim" according to statute (though, in *Staples*, the court did not use a proximate cause requirement). 2009 U.S. Dist. LEXIS 81648, 2009 WL 2827204 at 3. The *Staples* court held the defendant jointly and severally liable because it would be improper for the victim to receive more than was due as a result of the defendant's crime, and because Amy was seeking restitution in other cases. 2009 U.S. Dist. LEXIS 81648, [WL] at 4. In *United States v. Brunner*, 2010 U.S. Dist. LEXIS 8285, 2010 WL 148433, at 3 (W.D.N.C. 2010) the court applied a rule of reasonableness to determine what losses Amy suffered as a proximate result of her victimization. The court found that the defendant was only a small contributor to the overall loss and that coordinating joint liability among so many potential offenders would be too complex; therefore, it apportioned the total amount of Amy's claimed losses. 2010 U.S. Dist. LEXIS 8285, [WL] at 4. In the end, the Brunner court awarded Amy $ 6,000.00 of the $ 2,855,173.00 claimed by Amy. *Id.* Likewise, in *United States v. Hicks*, C.A. No. 09-150, 2009 U.S. Dist. LEXIS 110253, 2009 WL 4110260, at 4-6 (E.D.Va. 2009), a case involving a different victim known as "Vicky," the Court, after finding that there was proximate cause tying the defendant's conduct to Vicky's harm, considered the large number of other offenders who caused the harm and determined that an award of $ 3,000.00 out of the claimed $ 128,000.00 was just.
>
> Finally, in *United States v. Ferenci*, 2009 U.S. Dist. LEXIS 80339, 2009 WL 2579102 (E.D. Cal. 2009), when the victim provided a total number representing the harm suffered, but could not break it down to show what portion was proximately caused by the defendant, the court looked to 18 U.S.C. § 2255 for guidance. § 2255 provides a civil remedy for victims of particular child abuse and exploitation offenses,

and it applies a presumption that they have suffered no less than $ 150,000.00 in losses. The *Ferenci* court relied on 3664(h) as a basis for using its discretion to apportion retribution and calculated that, of the presumed $ 150,000.00 in damages suffered by the victim, the defendant was the proximate cause of roughly two percent, and awarded $ 3000.00 in restitution. *Ferenci*, 2009 U.S. Dist. LEXIS 80339, 2009 WL 2579102 at 5.

*Id.* at *47-49.

As the Court has previously discussed, it is lacking any evidence to establish what if any amount of the victim's losses were proximately caused by Defendant Klein. Nonetheless, the Court finds that a nominal amount of damages should be awarded to the victim "Amy." Defendant Klein is therefore ordered to pay the victim "Amy" $5,000 in restitution.

## IV. CONCLUSION

Based on the aforementioned discussion, the Court **GRANTS IN PART** the Government's request for restitution. The Court does not find that there is justification to award the entire amount of restitution sought by "Amy," nor is there sufficient evidence to establish any specific amount of the victim's losses that were proximately caused by Defendant Klein. Nonetheless, the Court does find that nominal damages are warranted in this case and hereby orders Defendant Klein to pay the victim "Amy" $5,000 in restitution.

**IT IS SO ORDERED.**

                                     */s/ George C. Smith*
                                     **GEORGE C. SMITH, JUDGE**
                                     **UNITED STATES DISTRICT COURT**